UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 22-cr-00089 |
| VERSUS | JUDGE HICKS |
| PAUL VINCENT WILLIAMS (01) | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Paul Vincent Williams ("Defendant") is charged with one count of possession with intent to distribute controlled substances, one count of felon in possession of firearms, and one count of possession of firearms in furtherance of a drug trafficking crime. The charges arise out of a traffic stop of Defendant. Before the court is Defendant's Motion to Suppress (Doc. 20). Defendant argues that all evidence seized as a result of the stop should be suppressed because (1) the initial traffic stop was unlawful, (2) the traffic stop was unconstitutionally delayed and extended, and (3) Defendant did not consent to a search of his vehicle. For the reasons that follow, it is recommended that the motion be denied.

### Relevant Facts

A hearing was held on the motion to suppress. The following facts were established. In early February of 2021, the FBI's Northwest Louisiana Violent Crimes Task Force began an investigation of Defendant for selling methamphetamine. Tr. 5-6. A confidential source ("CS") contacted Special Agent Frank Kelly and TFO Steven Harris, who were co-case agents in the investigation. The CS told the agents that he received 28 grams of

methamphetamine from Defendant and that Defendant wanted to conduct a second drug sale. Tr. 6.

The agents met with the CS and conducted a controlled buy of methamphetamine from Defendant. Tr. 6. After the purchase, the CS told the agents that there were several bricks of suspected methamphetamine in Defendant's vehicle and that Defendant wanted to do additional deals. The CS and the agents conducted a second controlled buy on February 12, 2021. Tr. 7.

The agents applied for a federal ping warrant and a historical cell cite warrant to monitor Defendant's cell phone activity and location. Tr. 8. They conducted surveillance of Defendant. On March 4, 2021, agents followed Defendant to a storage unit and approached him. The agents smelled the odor of marijuana coming from Defendant's car. They searched the car and found approximately $14,000 in cash, along with methamphetamine, marijuana, and a firearm with ammunition. Tr. 8-9.

The agents attempted to develop Defendant as a confidential source to find his source of supply. Defendant met with the agents, but it soon became apparent that Defendant would not cooperate as a confidential source. Tr. 9.

In February of 2022, a CS informed the task force that he was able to purchase methamphetamine from Defendant. The agents developed a plan to conduct a controlled buy. Tr. 11. The FBI task force and the Bossier Parish Sheriff's Office Narcotics Unit set up a plan to conduct a probable cause traffic stop while Defendant was on his way to meet the CS. Tr. 13-14. There were in-person and telephone briefings to make agents aware of the plan. Tr. 14.

On February 10, 2022, this plan was put into action. Agents participating in the operation communicated on the same radio channel. Tr. 14. Agents established surveillance of Defendant in his vehicle and observed him travel from Bossier City into Shreveport. Tr. 12. Once Defendant was in Caddo Parish, the CS called him to order the methamphetamine. Tr. 13. Agent Kevin Harris observed this conversation. Tr. 31. The CS ordered a half ounce of methamphetamine, and Defendant agreed. They planned to meet at the Walmart in Blanchard to conduct the deal. Tr. 13.

Agents confirmed that Defendant was heading toward the Walmart. Tr. 13. They planned to stop Defendant once he had passed Interstate 220, which would confirm that he was heading to meet the CS. Tr. 13. Agent Justin Dunn and Agent Ashcroft were waiting in a patrol car on North Market Street just north of Interstate 220. Dunn saw Defendant's vehicle traveling westbound on Poleman Road, which intersects with North Market Street. Tr. 48. Another agent informed Dunn that he saw Defendant's vehicle leave its lane of travel and travel above the posted speed limit. Dunn initiated the traffic stop of Defendant. Tr. 50.

Dunn exited his patrol car and approached Defendant's vehicle. He asked Defendant to step out of his vehicle, but Defendant refused. Defendant first said that he did not feel safe, then said that he did not want to step out because his daughter was in the vehicle. Tr. 50-51. Dunn then asked Defendant to remove the keys from the ignition, place them on the dash, and place his hands on the steering wheel. Tr. 52. Agent Dunn noted that Defendant seemed nervous from the beginning of the stop. Tr. 53.

Defendant eventually exited the vehicle, and he allowed Agent Ashcroft to go inside the vehicle to retrieve Defendant's license and registration. Tr. 53. Dunn performed a pat down of Defendant and felt an object that could have been a pocketknife underneath some money in Defendant's pocket. Dunn asked for Defendant's permission to retrieve the item, but Defendant denied permission. Dunn then handcuffed Defendant for officer safety. Tr. 53-54. Defendant's daughter was moved to the backseat of Dunn's patrol car. Tr. 57.

Dunn asked Defendant if the agents could look inside the vehicle, and Defendant said they could. Tr. 54. The agents found a fanny pack with a combination lock wrapped around the driver's seat. Agent Ashcroft went to Defendant to ask for the combination, and Defendant withdrew consent to search the vehicle. Tr. 57.

K-9 officer Corporal McLaughlin, who was part of the original briefing for the operation, arrived at the scene. Tr. 56. The agents conferred with McLaughlin about the status of the investigation. McLaughlin's K-9 conducted an open-air sniff of the vehicle and gave a positive alert on several exterior panels. Tr. 17. The agents decided to obtain a search warrant for the vehicle. Tr. 19.

The mother of Defendant's daughter arrived on the scene to pick up the child. Tr. 60. Defendant's vehicle was towed from the scene to the Caddo Parish Sheriff's Office. Tr. 18. Defendant was transported to the investigations division office. Tr. 60. Because Defendant had revoked consent to search, agents obtained a federal search warrant for Defendant's vehicle. Tr. 40. During the search of the vehicle, the agents recovered suspected methamphetamine, suspected heroin, cash, and firearms. Tr. 18, 40.

Agent Harris interviewed Defendant at the investigations office. Harris gave Defendant his Miranda warnings, and Defendant agreed to the interview. Tr. 32. Defendant told Harris that he cuts heroin with sugar so that users will get a headache and be discouraged from buying it again. He also stated that the guns in his vehicle were ones he found and took to get them off the streets. Tr. 33.

**Law and Analysis**

**A. The Traffic Stop**

"The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Rosales-Giron, 592 Fed. Appx. 246, 250 (5th Cir. 2014); quoting United States v. Stevens, 487 F.3d 232, 244 (5th Cir. 2007). "Under Terry, we determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." Id.

For a traffic stop to be justified at its inception, an officer need only have reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." United States v. Breeland, 53 F.3d 100, 102 (5th Cir.1995). An officer may stop a motorist for a traffic violation even if, subjectively, the officer's true motive is to investigate unrelated criminal offenses. United States v. Sanchez-Pena, 336 F.3d 431, 437 (5th Cir. 2003).

In this case, it is not necessary for the court to address whether there was reasonable suspicion to stop Defendant or the duration of the traffic stop because the agents had probable cause to arrest Defendant under the collective knowledge doctrine. If an officer has probable cause to believe the suspect has committed or is committing an offense, the defendant may be arrested. Michigan v. DeFillippo, 443 U.S. 31 (1979). If probable cause to arrest exists, even lengthy detention does not constitute an unreasonable seizure. United States v. Williams, 124 Fed. Appx. 885 (5th Cir. 2005). Probable cause is based on the totality of the circumstances and may rely on the collective knowledge of other officers if there is some communication between them. United States v. Webster, 750 F.2d 307, 323 (5th Cir. 1984).

The Fifth Circuit has applied the collective knowledge doctrine in two types of cases: (1) those where the arresting officer has no personal knowledge of any of the facts establishing probable cause but simply carries out directions to arrest given by another officer who does have probable cause, e.g., United States v. Impson, 482 F.2d 197 (5th Cir. 1973); United States v. Allison, 616 F.2d 779 (5th Cir. 1980); and (2) those where the arresting officer has personal knowledge of facts which standing alone do not establish probable cause but, when added to information known by other officers involved in the investigation, tips the balance in favor of the arrest, e.g., United States v. Nieto, 510 F.2d 1118, 1120 (5th Cir. 1975); United States v. Agostino, 608 F.2d 1035, 1037 (5th Cir. 1979).

In the former cases, the officer who issues the directive must himself have probable cause to arrest. Weeks v. Estelle, 509 F.2d 760, 765 (5th Cir.), cert. denied, 423 U.S. 872 (1975); United States v. Simpson, 484 F.2d 467, 468 (5th Cir. 1973). In the latter cases,

the "laminated total" of the information known by officers who are in communication with one another must amount to probable cause to arrest. United States v. Edwards, 577 F.2d 883, 895 (5th Cir. 1975) (en banc); Agostino, 608 F.2d at 1037; United States v. Webster, 750 F.2d 307, 323 (5th Cir. 1984). Thus, the arresting officer need not have personal knowledge, if being directed by another who does. See, e.g., United States v. Ibarra, 493 F.3d 526, 530 (5th Cir. 2007) (probable cause existed under collective knowledge doctrine where arresting officer did not know all of the facts; arresting officer was told to be on the look-out for a certain vehicle and to make a traffic stop if the driver violated any traffic laws). The collective knowledge doctrine is not limited to probable cause for arrests; it has also been applied in the context of reasonable suspicion for a traffic stop. See, e.g., United States v. Carmenate, 2009 WL 2998568 (5th Cir. 2009) (collective knowledge supported reasonable suspicion for traffic stop); United States v. Cortez, 2008 WL 5068619 (5th Cir. 2008) (collective knowledge provided reasonable suspicion for traffic stop and justified continued detention while the officers waited for canine to arrive).

The agents' investigation of Defendant prior to the traffic stop provided probable cause to stop Defendant and to search his vehicle. The agents knew that Defendant was a methamphetamine dealer. They previously conducted controlled buy of methamphetamine from Defendant through a CS, and they found Defendant in possession of methamphetamine in March 2021. A few days before the stop at issue, agents had received information from a reliable and credible CS that Defendant was selling narcotics and the CS was able to buy from Williams. Agents conducted surveillance and identified Defendant's vehicle. On February 10, 2022, a controlled purchase was arranged, under the

supervision of agents, whereby the CS would purchase a half ounce of methamphetamine from Defendant at a Walmart in Blanchard. Agent Kevin Harris witnessed the phone call between the CS and Defendant during which the deal was arranged. That information was then relayed to agents in the field, who observed Defendant begin to drive in the direction of the sale location.

At the time of the stop, Agents Dunn and Ashcraft had been in communication with other agents regarding Defendant's suspected criminal activity. They knew that a controlled purchase of methamphetamine from Defendant had just been arranged and that Defendant was headed to the location of the purchase. Based on these facts, under the collective knowledge doctrine, agents had probable cause to stop and detain Defendant.

### B. Search of the Vehicle

Defendant argues that, contrary to the agents' assertions, he did not provide consent for the initial search of his vehicle prior to the K-9 alert. The automobile exception permits the warrantless search of an automobile when there is probable cause to believe that the vehicle contains evidence of criminal activity or is transporting or harboring contraband. See United States v. Ross, 456 U.S. 798, 823 (1982). Thus, police officers may search an automobile without a search warrant when they have probable cause to believe it contains contraband or evidence of criminal activity. The search is justified because of a vehicle's inherent mobility, which is "an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear." Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). Importantly, the justification for the search does not cease once the vehicle is immobilized, "nor does it depend upon a reviewing court's assessment of the

likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant." Michigan v. Thomas, 458 U.S. 259, 261 (1982) (per curiam).

As explained above, the agents had probable cause to believe that Defendant had contraband in the vehicle because he was on the way to a controlled buy arranged by the agents and a CS. The agents did not need Defendant's consent to search his vehicle. The probable cause to search extended to the entire car, even closed containers such as the locked fanny pack where Defendant kept his drugs. See Wyoming v. Houghton, 565 U.S. 295, 300 (1999); Ross, 456 U.S. at 825 ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). Thus, the search of the vehicle was not unlawful.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 20) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of December, 2022.

Mark L. Hornsby
U.S. Magistrate Judge